UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 25-CR-20239-CMA

**UNITED STATES OF AMERICA,**
    **Plaintiff,**

v.

**HAVA YFRAH AUSTIN,**
    **Defendant.**
_____/

### DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO PRE-SENTENCE INVESTIGATION REPORT

COMES NOW, Defendant, **HAVA YFRAH AUSTIN**, by and through her undersigned counsel, who replies to the Government's Response to Defendant's Objections to Pre-Sentence Report [ECF No. 43] as follows:

1. She concedes the abuse-of-trust enhancement.

2. As to (B)(1)-Defendant's offer to repay the victims (owners of the corporate victim Exist, Inc.): The Court will obviously hear a factual dispute regarding this, but Defendant will testify that she did offer to pay the victims from the proceeds of the sale of the two properties she co-owned with her spouse and that the victims rejected her express offers because the amount would be too low and they did not believe that she gambled all of the proceeds away and believed she still had the money. Defendant offered to work for Exist two weeks out of every four for the rest of her life. They indeed knew when the properties were sold. She remains willing to make restitution to the victims by giving them whatever remains of her portion of the properties' sales. The victims having declined her payment offers, she did pay down debt and has paid her lawyers.

3. As to (B)(2)- Mrs. Austin was kept on at Exist after discovery of her theft, not because of her special knowledge of the company's passwords, but because of her knowledge of the victims' own criminality and were unsure of how to proceed with her given that knowledge. They were afraid to sever ties with her. It is not credible that Exist's owners, the victims, continued to employ Defendant for months because she had complete control of Exist's practices and passwords-they could have obtained the passwords and whatever they needed in one day and then fired Defendant. They kept her on because they were in a Catch-22: To report her crimes may expose their own. Additionally, once confronted by the company owners, Mrs. Austin immediately provided them with all company passwords in her possession. Following the turnover of the passwords, the company owners continued to allow Mrs. Austin to perform certain work for them for eight more months.

4. As to (B)(3)- Mrs. Austin did not plan to flee her family, friends and pets when she booked a flight to Israel and the government maintains a very inconsistent position. The government claims that Mrs. Austin bought a plane ticket "on short notice." The government appends a letter from the Israeli government approving her "returning resident" status dated January 29, 2025 but she did not travel until her arrest date of April 1, 2025, hardly short notice. The Court will hear how benign Mrs. Austin's travel was to be. Firstly, the application for "returning resident" status was made because it saved enormously on the cost of shipping the container noted by the government and she intended to reside part-time in both the United States and Israel. Mrs. Austin is a dual citizen. She is entitled to maintain a residence in both Israel and the United States. Having lost her work at Exist and dying of COPD, she wanted to maintain residences in

both Israel and the United States so that she could spend time with her mother and sister in Israel while also having a life with her boyfriend, sister and other family members and her pets in the United States. She did not bring her pets with her and did not buy a return ticket because she did not know how long her trip to Israel would be. Her husband was to tend to her pets while she was in Israel. She sent a duplicate set of pet necessities because she planned on traveling every now and then with the pets to Israel. It's not so "odd" that she shipped all of these cat necessities but not her cats. It would only be odd if she was abandoning her pets, which she was not. There was nothing nefarious at all about Mrs. Austin's conduct-the government makes several allegations regarding her behaviors, but the assumptions made were wrong.

5. As to (B)(4), indeed Hava Austin did gamble away all of her savings. While she did not steal from her loved ones, after decades as an accountant, her gambling left her with no savings.

Also, since the government's filing, Defendant did provide the sources of information for spreadsheets she provided of transactions proving that she lost her fraud profits.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of September, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ Leah H. Mayersohn
Leah H. Mayersohn, Esq. FBN: 0009059
Mayersohn Law Group, P.A.
500 East Broward Blvd., Suite 1580
Ft. Lauderdale, Florida 33394
(954) 765-1900
service@mayersohn.law
*Attorney for Defendant*