UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 25-CR-20239-CMA

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.

**HAVA YFRAH AUSTIN,**

    **Defendant.**

_____/

"Compulsive gambling, also called gambling disorder, is the uncontrollable urge to keep gambling despite the toll it takes on your life." *Mayo Clinic* at mayoclinic.org

"Insanity is repeating the same mistakes and expecting different results." *Narcotics Anonymous Basic Text*, 1983 (Chapter 4)

"By physically hijacking the brain, addiction diminishes the addict's capacity to evaluate and control his or her behaviors. Rather than rationally assessing the costs of their actions, addicts are prone to act impulsively, without accurately weighing future consequences." *United States v. Dikiara*, 50 F. Supp. 3d 1029, 1033 (E.D. Wis. 2014)

"Significantly reduced mental capacity" means the defendant, although convicted, has a significantly impaired ability to…(B) control behavior that the defendant knows is wrongful. Application note to §5K2.13, U.S.S.G.

## INTRODUCTION

    How to administer justice to a defendant who is before the court due to one addiction and is soon to die from another? A defendant who couldn't stop herself from stealing, even though she thought she would be exposed and arrested every time she stole? A defendant who is dying, unable to stop smoking cigarettes, even though she is tethered to an oxygen tank?

    Defendant herein argues that a sentence served in home confinement with substantial conditions, rather than incarceration, is what is an appropriate sentence in this no-win case, based upon:

    a) Her history of trauma, including surviving a rape and surviving her friend's suicide by drinking poison after being molested by her father, both while she was a teen;
    b) Her addictions, one of which, cigarettes, is actively killing her;
    c) The high probability of her death within 5 years;

d) Her lack of criminal history;
e) Her close family and personal bonds;
f) That a sentence of imprisonment will not provide just punishment in this case; and
g) That there is no need for her incarceration.

Defendant argues that given the foregoing and her significantly reduced mental capacity "(SRMC)", which led to the offenses, the court should vary downward from the guidelines range and order that defendant's sentence be served in home confinement with stringent conditions rather than in a penitentiary.

## DEFENDANT

Hava Austin is a 58-year-old wife, sister, friend, and gambling and nicotine addict. Her addictions bring her before the Court and will soon kill her. She is dying from severe COPD and chronic respiratory failure. She smoked 3-4 packs of cigarettes per day for most of her life, has been unable to completely stop smoking, and still smokes a pack a day, while attached to an oxygen tank. She requires a BIPAP device, not only to force the oxygen in, but to force the carbon dioxide out of her. While smoking. She is also a survivor of an aneurysm and related surgery, which had her temporarily comatose in 2018. Her life expectancy is less than 5 years, and within that time, she will likely be fully intubated.

Mrs. Austin is now an admitted felon nearing the end of her life, concussed and ashamed by what she did and who she became through addiction to commit the crimes she committed, yet hopeful that the story of her fall from grace can serve to help others who still suffer from their addictions. She is an accountant who stole millions of dollars from a client and who admitted her crimes when confronted. She could not help herself from repeatedly stealing from a client who trusted her even though she knew that one day she'd be before a court for sentencing.

How did she get here? It is very likely that two traumas early in her life caused her to

seek vice to calm the uncomfortable emotions caused by those traumas.  She was raped as a teenager by a stranger and then buried the trauma.  Then, a high school friend, who was molested by her father, succumbed to suicide by drinking poison on her farm.

An explanation is not an excuse, but it does explain.  Trauma explains Hava Austin's gambling addiction.  Entranced by the lights, sounds, and anonymity of a casino, and the prospect of winning it all back, Hava Austin spent endless hours not feeling her emotions.

She now asks the Court to see her humanity and significantly reduced mental capacity, even as the victims seek retribution.  A sentence at a lower than guidelines sentence, served in home confinement, is what is appropriate in this no-win situation.

## DISCUSSION

This Court has broad discretion to craft an appropriate sentence. The Sentencing Guidelines are, "[M]erely advisory, and the court is not bound to apply the sentence indicated by the Guidelines so long as they are first determined and then carefully considered." *United States v. Gibson*, 442 F. Supp. 2d 1279, 1282 (S.D. Fla. 2006) (citing *United States v. Booker*, 543 U.S. 220, 260–61 (2005)). Moreover, not only are the Guidelines merely advisory, they are not even presumptively reasonable, and they represent only one of a number of relevant considerations. *See Nelson v. United States*, 555 U.S. 350, 352 (2009) ("Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable . . . The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable.").

a) **The guideline range is greater than necessary to achieve the goals of sentencing.**

"Sentencing courts are tasked with imposing a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2), which

include retribution, deterrence, incapacitation, and rehabilitation.  18 U.S.C. § 3553(a)." *United States v. Lavariega-Juarez,* 2019 U.S. App. LEXIS 10876;  2019 WL 1579587 (11th Cir. 2019). "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue."  *Gall v. United States*, 552 U.S. 38, 52 (2007).

Applying this tradition yields compelling justification for a variance.  The guideline imprisonment range is 51 to 63 months.  Defendant Austin is less than likely to live 5 years.  She needs to have oxygen forced into her lungs to breathe.  She needs the oxygen to be forced in with sufficient strength to cause her to expel carbon dioxide, which she is unable to do on her own.  She will soon need to use a ventilator full-time.

Moreover, Hava Austin has no criminal history.  She had a purposeful and productive customer-oriented career as an accountant before her arrest in this case. As Mrs. Austin has acknowledged throughout her life, she has had much to be grateful for, and has had many opportunities. She is a rock for her family and friends, as related by many of them in their submissions to the Court.  She is also extremely limited in her ability to ever re-offend.  She closed her business, is now an admitted felon, and is a slave to an oxygen tank, 24/7. She turned in her lease and now isn't driving. Her health continues to decompensate, and she will become more dependent on others.

The purposes of sentencing in this case will be best served by a lower-than-guidelines sentence to be served in home confinement.

b) **Hava Austin is a gambling addict.** She took actions she never imagined she'd take to feed her addiction. She stole from victims who trusted her. She gambled it all away. All of it. She is sick. She is unable to describe the guilt she has over the crimes she committed and the shame she has over who she became that would commit such offenses. Luckily, Mrs. Austin has found recovery and decided to heal, attending GA and AA meetings, and is working hard at therapy. She now attends Birch Counseling and has an app preventing her from online gaming and/or gambling. She is signed out for life from the casino she used to frequent. She feels a great deal of relief to no longer live a lie. She does not own a car and lives a very unmaterialistic and simple life. She did not steal for opulence and did not spend any money on herself other than for gambling and/or gaming online.

c) **Hava Austin is a nicotine addict.** She is dying from that addiction, unable to stop. While she requires oxygen 24 hours a day, she still smokes a pack a day. She used to smoke 4. She is unable to stop all together. She is dying as she alternates oxygen and smoke. She has a less-than-equal chance of living 5 years.

d) **Hava Austin is a rape survivor**. Mrs. Austin was raped by a stranger at the age of 16. Her addictions are maladaptive salves for her emotions. She needs to continue participation in substantial therapy to reckon with the unthinkable, unprocessed trauma which she buried for years.

e) **Hava Austin suffered the trauma of the death by suicide of her best friend.** Soon after her own rape the defendant's best friend died by suicide, poisoning herself to stop the pain of her father's molestation.

f) **Hava Austin suffered the trauma of the premature deaths of her brother and father.** Her addictions are maladaptive salves for her emotions.

g) **Defendant has accepted full responsibility.** She admitted her crimes to her victims. She has openly admitted her illegal conduct to this Court, the government, her family and her friends and is prepared for whatever sentence the Court deems appropriate.

h) **Mrs. Austin has the support of family members and friends**. Defendant has presented to the Court an impressive set of letters in her support and several people close to her will appear live before this Court at the sentencing hearing.

i) **While having family support is a basis for a variance, *providing* family support is also a basis for a variance under § 3553(a)(1).** Defendant has been a devoted friend, aunt, and wife and a family member who has always taken care of those around her. As a family friend stated in his letter to the court, "Hava serves as a primary caregiver for her husband, who depends on her daily support. Her incarceration would create significant hardship for someone who relies on her care and presence."

j) **Defendant has no history with the law.** She has had no involvement with the criminal justice system in any way, nor has she been involved in civil, regulatory or administrative proceedings. In terms of analyzing the law-abiding personal history of a defendant, there is generally a great deal of variation among a group of defendants even where all the defendants have no criminal history points. On one hand are defendants with a history of arrests, very old convictions, and non-adjudicated or dismissed cases, none of which result in criminal history points. In the middle are defendants who have no criminal background, but who have prior civil or regulatory adjudications or administrative violations. At the other end are defendants who, like Mrs. Austin, have a

spotless record. As all these defendants would be treated the same under the Sentencing Guidelines, §3553(a)(1) suggests those differences should be accounted for in a variance based on a defendant's unique history and personal characteristics. This is certainly the case here. Defendant has been a productive and law-abiding citizen her entire life. She has had no other brushes with the law. Her personal and professional life has been characterized by integrity, honesty, and, more broadly, doing the right thing.

k) **No bar to variance.**  While Mrs. Austin's lack of criminal history was taken into account in calculating her advisory Guideline range, that is no bar to also using it as a basis for a variance. See *United States v. Chase*, 560 F. 3d 828, 831 (8th Cir. 2009). The Eleventh Circuit affirmed the use of this factor, in combination with others, to affirm a downward variance in *United States v. Pugh*, 515 F. 3d 1179 (11th Cir. 2008).

l)  **A sentence below the guideline range will provide more than adequate deterrence.** In considering whether a downward variance is appropriate, the Court must consider the need to afford adequate deterrence and protect the public from further crimes of the defendant. 18 U.S.C. §3553(a)(2). Mrs. Austin has wound down her business and will not be in any position to offend against any client.  A different client who wrote to this court stated,

> I have known Hava for over 20 years in both a personal and professional capacity. She has been a good friend for decades and has also served as my accountant throughout this time. Hava has always conducted herself with the highest standards of integrity and professionalism. In all these years, there has never been a single instance where she mishandled finances or acted dishonestly.

*Gilli Yosef letter*.

   m) She offended against one victim and closed her business. She will not be in a position to re-offend. She is also physically disabled. There is no deterrent effect to incarcerating Hava Austin.

   n) **A sentence of imprisonment will not provide just punishment for Mrs. Austin.**

     1. *Just Punishment*: As our courts have recognized, collateral consequences of conviction are relevant to the "need" for the sentence imposed to reflect just punishment. *See, e.g.*, *United States v. Garate*, 543 F. 3d 1026, 1028 (8th Cir. 2008). For instance, in *United States v. Gardellini*, 545 F. 3d 1089 (D.C. Cir. 2008) the Court affirmed a below-guideline sentence based in part upon the Court's findings that defendant suffered substantial mental and personal stress as a result of his prosecution, and the Court's findings, "were directly relevant to the § 3553(a) analysis, which requires sentences to reflect, among other things, "the history and characteristics of the defendant," the need to, "protect the public from further crimes of the defendant," the need to, "provide just punishment for the offense," and the need to, "afford adequate deterrence." Here, Mrs. Austin has lost everything but her loved ones. She closed her business. She is dying. She is now a convicted felon with a life expectancy of fewer than 5 years, tethered to an apparatus that blows her oxygen into her and her carbon dioxide out of her. She has nothing to live for except, perhaps, to help others to avoid her fate through her participation in Gamblers Anonymous and Alcoholics Anonymous. As is stated in the 9th Step Promises, "No matter how far down the scale we have fallen, we will see how our experience can benefit others." With no prior history of involvement with the law of any kind, her physical disabilities and short life expectancy, being an unemployed and

unemployable felon held in scorn is punishment enough.  She does not need to be incarcerated for just punishment to be done.  She has an ability to save others from her fate through participation in active recovery.

*There is no need for incapacitation pursuant to 18 U.S.C. § 3553(a)(2)(C).*  Hava's age, strong family support, professional background, gainful business ownership until her arrest, her active participation in Gambler's Anonymous, Alcoholics Anonymous, and in therapy, and her physical disabilities each strongly support the conclusion that she is not likely to reoffend.  Home confinement with appropriate conditions is more than sufficient to ensure that she does not reoffend.

2. *She can work to pay some restitution to her victims.*  Mrs. Austin can be a bookkeeper supervised by an employer and work to pay some restitution to her victim.  She can earn a fair amount annually and is willing to give everything she earns to her victims.  This will not be possible if incarcerated.

3. *Pursuant to 18 U.S.C. § 3553(a)(1), the court, in determining the particular sentence to be imposed, shall consider the history and characteristics of the defendant,* including her physical condition. The defendant was diagnosed with chronic hypoxemic respiratory failure, centrilobular emphysema, lung nodules, and chronic obstructive pulmonary disease (COPD), for which the defendant requires a BiPAP machine. **Thus, a departure or variance may be warranted**." *Par.* 95, Presentence Investigation Report (emphasis added).

## ADDICTION AND SENTENCING

**United States v. Dikiara**, 50 F. Supp. 3d 1029 (E.D. Wis. 2014) is a case in which a 56-year-old gambling addict with no prior record stole over $1 million from her

employer. She gambled away what she stole at a casino. Although the guideline range was 41 to 51 months, the defendant was only sentenced to 15 months' imprisonment. The court departed downward. The court noted the disparate impact that "the loss amount" had on the guideline range and noted that the guideline did not take into account "other relevant factors, including motive and culpability", *Id*. at 1032, referencing *United States v. Ranum*, 353 F. Supp.2d 984, 985-86. The *Dikiara* court noted that "Defendant did not act out of a desire to harm her employer, nor did she steal in order to fiancé a lavish lifestyle. Virtually all of the money went to the casino." Then the court discussed *United States v. Hendrickson*, 25 F. Sup. 3d 1166 (N.D. Iowa June 11, 2014), "By physically hijacking the brain, addiction diminishes the addict's capacity to evaluate and control his or her behaviors. Rather than rationally assessing the costs of their actions, addicts are prone to act impulsively, without accurately weighing future consequences.". . ."Judge Bennett was talking about drug addiction, but as the evidence defendant presented showed, gambling addiction is similar."

    The *Dikiara* court referenced research cited by the defense, which stated, "that slot machines, her preferred mode of gambling, were more addictive than other forms of gambling." The court continued by assessing, "defendant's efforts to obtain treatment and rebuild her life after this crime came to light." "She regularly attended GA meetings, participated in individual counseling, and voluntarily banned herself from the casino." "Finally, I took into account defendant's acceptance of responsibility, admitting the crime to her employer and then the FBI when confronted."

    *Dikiara* was virtually identical. A same-aged female defendant, a gambling addict, stole 7 figures from her employer and gambled it all away at a casino. In each,

the defendant did not act out of a desire to harm her employer, nor did she steal to finance a lavish lifestyle. Virtually all of the money went to the casino. As in *Dikiara*, the loss amount exaggerates the guidelines range. A downward departure is appropriate.

In ***United States v. Sadolsky***, 234 F. 3d 938 (6th Cir. 2000), the court faced the sentencing of a gambling addict who stole from an employer. When confronted, he admitted that he committed his crimes to pay off his gambling debts. The court noted the amendment of § 5K2.13, U.S.S.G., and the note cited above. The 6th Circuit affirmed the district court's finding that the defendant had, "a gambling problem that qualified as an SRMC," and said: "(T)he trial court did not err in finding that Sadolsky was a compulsive gambler who qualified for a downward departure under § 5K2.13. . .."

In ***United States. V. Chan***, 2018 U.S. Dis. LEXIS 102050; 2018 WL 3031853 (D.C. Conn. 2018), the court discussed its sentencing of a defendant "at the mercy of a compulsive gambling disorder (which) led him to steal hundreds of thousands of dollars over the course of three years from a company for whom he worked as chief financial officer" after he pleaded guilty for not reporting the stolen money on his tax returns. "At sentencing, Chan convinced me that his gambling disorder warranted a sentence of probation rather than a Sentencing Guidelines range of imprisonment." "I decided in large part because of the severity of Chan's gambling disorder to vary downward from the Sentencing Guidelines recommended range of imprisonment and to impose a five-year term of probation."

In United ***States v. Checoura,*** 176 F. Supp. 2d 310 (D.C. New Jersey 2001), the Court granted a downward departure because the defendant "met her burden to demonstrate that she suffered from a significantly reduced mental capacity." The

defendant "utilized her position as a bookkeeper for her employer. . .to divert over $4 million dollars from the firm to her personal use." The defendant was a compulsive gambler. The court found that defendant, "did not choose to gamble compulsively, any more that other compulsives choose to count every line in a cracked sidewalk, or to wash their hands after touching every doorknob." *Id* at 314. Downward departure was granted.

Defendant also offers this Court another district court case in which a court faced the sentencing of an addict-this time shoplifting addict-***United States v. Roach***, 2001 U.S. Dist. LEXIS 8454; 2001 WL 664438 (N.D. Ill. 2001). *Roach* stole from her employer to support her compulsive shopping addiction which she did in order to ameliorate her depression and which she could not control. "This led to an equally compelling need for her to engage in the fraud against her employer since the funds she obtained enabled her to conceal her shopping binges form her husband and others, and also enabled her to continue to engage in her compulsive behavior."  "In the words of §5K2.13 and its application notes, defendant committed the offenses while suffering from a significantly reduced mental capacity, in that she had a significantly impaired ability to control behavior she knew was wrongful." "Her significantly reduced mental capacity was not caused by the use of drugs or other intoxicants, and the offense did not involve violence or a threat of violence. The risk that the defendant might, as a result of her condition, break the law, was minimized by her ongoing psychiatric treatment. The, defendant established the predicate for a downward departure.

Lastly, as stated by L. Lustberg in <u>Sentencing the Sick; Compulsive Gambling As The Basis for a Downward Departure Under the Federal Sentencing Guidelines,</u> 2 Seton Hall

J. Sport L. 551, 76 (1992): "The downward departure on the basis of compulsive gambling is therefore not only consistent with the Sentencing Guidelines, but fulfills the purposes of sentencing which underlie the Guidelines. More importantly, such a departure is consistent with the compassion and humanitarianism which must always characterize the American system of justice."

## COST

A final reason not to incarcerate Hava Austin is the potential cost of her incarceration. Dr. Wolkowicz, defendant's expert pulmonologist, will inform the court that Mrs. Austin is in the later stages of her COPD. She will require four to five days of hospitalization a couple of times per year for exacerbations and will need longer hospitalizations as her breathing becomes even more compromised.

After Mrs. Austin's BiPAP is no longer able to keep her well-oxygenated, it will be converted to a non-invasive ventilator. However, the BiPAP will eventually no longer be sufficient. Then, Hava will need to be and stay hospitalized in the ICU on a mechanical ventilator before her death.

Under the *Care Level Classification for Medical and Mental Health Conditions or Disabilities* published by the Federal Bureau of Prisons, Austin is assigned the most intensive classification of Care Level 4 because she requires 24/7 oxygen therapy. The only incarceration option offered is FMC Carswell in Fort Worth, Texas. It is from there that she will be transported for her hospitalizations. The last time Hava was hospitalized was the evening of her arrest, when the jail was late at getting Mrs. Austin her oxygen machine, and then its battery pack ran out. Jail then staff refused to give Mrs. Austin her BiPAP machine. In her respiratory distress, she was treated in intensive care, as she will be when FMC Carswell is unable to adequately treat Hava.

Defendant **attaches** the Explanation of Benefits provided by Florida Blue for the stay, a one-day cost of $74,793.00.  She also **attaches** the billing from a stay in the hospital from October 6-19, 2023, which cost $428,353.30.

The reality is that Hava Austin will cost the United States several million dollars to house her until her death, which is likely to be before 2031. Defendant already argued grounds for a term of home confinement rather than incarceration. Given the costs involved, home confinement is undoubtedly a preferred sentencing option for this non-violent addict-offender with such severe health limitations.

## CONCLUSION

Hava Austin submits that her gambling addiction caused her a substantially reduced mental capacity, which prevented her from controlling her behavior.  She is entitled to downward departure as in the cited cases. However, her other addiction (smoking) is going to kill her, likely within 5 years.  She can't stop smoking cigarettes, even while dependent on an oxygen tank. Given her health, it would cost the government millions of dollars to incarcerate her.  The Court should order the defendant's sentence to be served in home confinement, as she is working towards a mechanical/intubated ventilator before she dies.  She thanks the Court.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of September, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ Leah H. Mayersohn
Leah H. Mayersohn, Esq. FBN: 0009059
Mayersohn Law Group, P.A.
500 East Broward Blvd., Suite 1580
Ft. Lauderdale, Florida 33394
(954) 765-1900
service@mayersohn.law
*Attorney for Defendant*